**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**UNITED STATES OF AMERICA**

vs.   3:06cr26/MCR
      3:08cv315/MCR/MD

**ISAAC J. SMITH**

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 (doc. 68). The government has filed a response (doc. 80) and the defendant has filed a traverse (doc. 82). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

**I. BACKGROUND**

Defendant was charged in a single count indictment with possession of ammunition in and affecting interstate commerce by a convicted felon. (Doc. 1). The indictment listed four prior felonies. These offenses were also separately listed in a corrected notice of enhancement information. (Doc. 5). Represented by Assistant Federal Public Defender Kafahni Nkrumah, defendant entered a plea of guilty pursuant to a written statement of facts and plea and cooperation agreement. (Doc.

14 & 16).  The facts in support of the guilty plea provided that while in the process of conducting a lawful traffic stop,[1] an Escambia County Sheriff's Office (ECSO) deputy observed the defendant, who was a passenger in the vehicle, attempt to conceal what appeared to be a firearm under the passenger seat. (Doc. 14 at 1). When the deputy opened the passenger door, he observed the defendant place what appeared to be a bag of cocaine into his sock. (Doc. 14 at 1-2).  The deputy removed defendant from the car, and observed the bag fall onto the floorboard of the car.  The defendant spun away from the deputy and ran, with the deputy giving chase.  During the pursuit, the deputy observed the defendant throw something to the ground. After securing the defendant, the deputy searched the area where he had observed the defendant discard the item and recovered a .38 caliber bullet.  A second .38 caliber round was found in the defendant's right front shirt pocket, and at the jail, a corrections deputy located a third round of .38 caliber ammo in the defendant's right front pants pocket. (*Id.* at 2).  The driver of the car in which defendant was riding let the scene almost immediately after the defendant left in pursuit of the defendant. Defendant is a convicted felon who has not had his right to possess ammunition restored. (*Id.*).

The plea proceedings were largely unremarkable.  Defendant was advised of his rights and the potential sentence range he faced, with and without prior felony convictions, as well as the fact that a 5K1 motion was not guaranteed.  (Doc. 35). The court questioned the defendant about his criminal history and whether he was the person named in the government's notice of enhancement as having received the listed convictions.  He agreed that he was. (Doc. 35 at 20).  After the government recited the statement of facts, defendant indicated that he disagreed with what the officer said about allegedly observing  a weapon and cocaine, and about a discrepancy between the police report and the statement of facts with respect to the

---

[1]The time of the stop was not reflected in the statement of facts, but at sentencing, the deputy testified that it took place about 7:20 p.m., after dark. (Doc. 36 at 47).

details of the deputy finding the bullets. (*Id.* at 23-26). Defendant ultimately admitted that he had possessed the ammunition, while denying that he had possessed a firearm or crack cocaine. (*Id.* at 26-27). Finally defendant expressed his satisfaction with his appointed counsel and counsel's representation of him. (*Id.* at 29).

The PSR calculated defendant's base offense level at 24 and assigned a 4-level upward adjustment for possession of a firearm or ammunition in connection with another felony offense (resisting arrest with violence), pursuant to § 2K2.1(b)(5) U.S.S.G. Defendant was subject to an enhanced sentence under 18 U.S.C. § 924(e), and therefore his adjusted offense level pursuant to U.S.S.G. § 4B1.4(b)(3)(A) was 34 due to his possession of the ammunition in connection with a crime of violence. His total offense level was 34, his criminal history category was VI, and therefore the applicable advisory guidelines range was 262 to 327 months imprisonment.

The district court overruled defendant's objection to the imposition of the adjustment pursuant to § 2K2.1(b)(5), finding that it was more likely than not that the defendant had possessed the ammunition in connection with either possession of a firearm as well as narcotics. (Doc. 36 at 78). The court overruled defendant's objection to the probation officer's failure to award him an adjustment for acceptance of responsibility. (Doc. 36 at 83). Defendant was sentenced at the mid point of the applicable guidelines range, to a term of 294 months imprisonment. (Doc. 21, doc. 36 at 89). After the imposition of sentence, counsel objected, contending that the sentence was in violation of the Eighth Amendment to the constitution. (Doc. 36 at 90). He asserted that the sentence was excessive, and that the defendant was correct, that he was being sentenced based on his record. Counsel further stated that the Armed Career Criminal Act was a poorly written law that punishes indiscriminately and needs to be re-written. He concluded by saying that the defendant had been taken advantage of by the system, that the sentence was excessive and cruel and asked the court to reconsider. The court denied the request. (Doc. 36 at 91).

**Defendant appealed, contending that the district court erred by finding that he used the ammunition "in connection with" another felony offense and that the district court erred under *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) by enhancing his sentence based on facts not proven to a jury beyond a reasonable doubt and sentencing him under a mandatory Guidelines system. The Eleventh Circuit found that the preponderance of the evidence supported the district court's finding that defendant possessed the ammunition in connection with either possession of cocaine or resisting arrest, or both. *United States v. Smith*, 480 F.3d 1277, 1280-1281 (11th Cir. 2007). With respect to the defendant's *Booker* argument, the appellate court found that the district judge had clearly considered the Guidelines as advisory, and therefore, she was not prohibited from making additional factual findings under the preponderance of evidence standard. *Id.* at 1281. The Eleventh Circuit affirmed defendant's sentencing finding that the district court had considered the advisory Guidelines range, as well as the 18 U.S.C. § 3553(a) factors and imposed a reasonable sentence. *Id.*

Defendant filed a petition for a writ of certiorari in the United States Supreme Court, which was denied on October 1, 2007. The instant motion, which was timely filed, is separated into five grounds for relief, each related to the allegedly deficient performance of counsel. The government opposes the motion in its entirety.**

**II. LEGAL ANALYSIS**

**Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255;** *Thomas v. Crosby,* **371 F.3d 782, 811 (11th Cir. 2004);** *United States v. Phillips***, 225 F.3d 1198, 1199 (11th Cir. 2000);** *United States v. Walker***, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is**

reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See Chandler v. McDonough,* 471 F.3d 1360 (11th Cir. 2006) (citing *Drew v. Dept. of Corrections,* 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore,* 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239. In this case, an evidentiary hearing is not warranted.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123

S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *Gaskin v. Secretary, Dept. of Corrections,* 494 F.3d 997, 1002 (11th Cir. 2007). "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)); *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065; *see also Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must

establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 518 F.3d 1291, 1301 (11th Cir. 2008); *United States v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003); (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v.*

*Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle,* 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

1. <u>Calculation of predicate offenses under ACCA</u>

Defendant first claims that counsel was constitutionally ineffective for failing to raise on appeal a claim that his Florida conviction for battery on a law enforcement officer should not have been used as a predicate offense under the A.C.C.A., as it was not a "crime of violence" as defined in U.S.S.G. §2L1.2.

The attachments to defendant's motion reflect that the original charge on the conviction defendant now seeks to contest was battery on a law enforcement officer in violation of § 784.07, Florida Statutes. The charge was later amended to one of aggravated assault in violation of § 784.021, Florida Statutes, and that is the charge of conviction. (Doc. 68, exh. A-C). The PSR reflects that defendant's conviction resulted from his having intentionally touched the buttocks of a female correctional officer. (PSR ¶ 35). Defendant does not contest the conviction itself, and in fact during the plea colloquy he admitted under oath that he was the person named in the conviction. (Doc. 35 at 20). Nor does he contest the underlying facts as described

in the PSR.  He now asserts, however, that the conduct of conviction was "aggravated" only because the complainant was a corrections officer, and thus it does not come within the "generic, contemporary meaning" of "aggravated assault," and can not be classified as a "crime of violence."

Defendant's reliance on U.S.S.G. §2L1.2 is misplaced.  This section provides guidelines for sentencing defendants who unlawfully enter or remain in the United States in violation of Title 8 U.S.C. §§ 1325(a) and 1326.  Additionally, since "aggravated assault" is specifically enumerated in the commentary to U.S.S.G. § 2L1.2 as a "crime of violence,"  the enhanced penalty would apply regardless of the facts underlying the conviction.  See *United States v. Wilson*, 392 F.3d 1243, 1246 (11th Cir. 2004) (citing *United States v. Fuentes-Rivera*, 323 F.3d 869, 871-872 (11th Cir. 2003)).

Furthermore, defendant's conviction of "aggravated assault" qualifies as a "crime of violence" under § 4B1.2 of the guidelines and also as a "violent felony" under 18 U.S.C. § 924(e)(2).  Each of these provisions provides in part that such an offense "has as an element the use, attempted use, or threatened use of physical force against the person of another."   18 U.S.C. § 924(e)(2)(B)(I); U.S.S.G. § 4B1.2(a)(1).  The Eleventh Circuit has held that physical contact of an insulting or provoking nature constitutes "physical force" because physical contact, of necessity, requires physical force to complete.  *United States v. Griffith*, 455 F. 3d 1339, 1342 (11th Cir. 2006) (citing *United States v. Nason*, 269 F.3d 10, 16 (1st Cir. 2001); *United States v. Smith*, 171 F.3d 617, 621 n.2 (8th Cir. 1999)).  The cases cited by the defendant that suggest otherwise are factually distinguishable or not binding on this court.  *Cf. State v. Hearns*, 961 So.2d 211 (Fla. 2007) (finding that battery on a law enforcement officer is not a forcible felony under all circumstances); *United States v. Sanchez-Torres*, 136 Fed.Appx. 644, 647-648 (5th Cir. 2005) ("destructive or violence force" required to satisfy the "use of force" element of a crime of violence.)

Additionally, even if the aggravated assault conviction was erroneously included in the district court's calculations, there was no error in applying the ACCA

enhancement because the defendant had three other qualifying predicate offenses, each of which he admitted under oath. (PSR ¶¶ 31, 32, and 34; Doc. 35 at 20). Defendant was convicted of two incidents of armed robbery with a firearm that occurred on February 2, 1982 and March 8, 1982 respectively. (PSR ¶¶ 32 & 31). The fact that the *convictions* for these two robberies occurred on the same date is of no consequence, "so long as the predicate crimes are successive rather than simultaneous." *United States v. Richardson,* 230 F.3d 1297, 1298 (11th Cir. 2000) (quoting *United States v. Lee*, 208 F.3d 1306, 1307 (11th Cir. 2000)). "Successive" crimes are separated by a "meaningful opportunity to desist. . . activity before committing the second offense" such as when the crimes are committed in different venues. *Richardson*, 230 F.3d at 1298 (quoting *Lee*, 208 F.3d 1307). These two crimes were more than a month apart. Paragraph 34 of the PSR reflects that defendant was also convicted of Sale of Cocaine, Possession of Cocaine with intent to sell, resisting arrest without violence, carrying a concealed firearm and aggravated assault with a firearm, for which he received a sixteen year sentence.

Therefore, even if the court were to find that counsel's performance was deficient for his failure to object to the inclusion of the aggravated assault conviction in the district court's ACCA calculations, which it does not, defendant cannot show prejudice. The aggravated assault conviction was properly considered, and even if it had not been, there were sufficient other underlying offenses to sustain the ACCA enhancement.

Finally, to the extent defendant argues in his reply that Amendment 709 to the sentencing guidelines has amended the way prior sentences are counted for purposes of the ACCA, he is not entitled to relief. This amendment has no bearing upon his case as it is not retroactive. See U.S.S.G. § 1B1.10(c). To the extent that defendant argues it is a "clarifying" amendment that can be applied retroactively, this argument has been rejected by the Eleventh Circuit. *United States v. Abusaid,* 295 Fed.Appx. 362 (11th Cir. 2008) (citing *United States v. Armstrong,* 347 F.3d 905, 909 (11th Cir. 2003); *see also United States v. Kliffmueller*, 2009 WL 1158696 (5th Cir.

2009) (except on direct appeal, a clarifying amendment not listed in U.S.S.G. § 1B1.10(c) is not to be retroactively applied) (citing *United States v. Drath*, 89 F.3d 216, 217-218 (5th Cir. 1996)); *United States v. Ahrendt,* 560 F.3d 69, 79 (1st Cir. 2009) (Amendment 709 is substantive, rather than clarifying, and not intended to be applied retroactively).

### 2. Failure to file a Motion to Suppress

Defendant next asserts that counsel provided constitutionally ineffective assistance because he failed to file a motion to suppress. Defendant states that before he entered his guilty plea, he told counsel to file a motion to suppress regarding the traffic stop. He told counsel that he believed that the officer's failure to call in the license plate number to the dispatcher was a violation of his Fourth and Fourteenth amendment rights. Counsel purportedly told defendant that as a mere passenger in the car, he did not have standing to object and did not file the requested motion.

To the extent defendant now faults counsel for a misstatement of the law regarding a passenger's standing to challenge a traffic stop, he is mistaken. The case upon which defendant relies for the proposition that a passenger <u>may</u> challenge a traffic stop, *Brendlin v. California,* 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007), was decided on June 18, 2007, three months after his appeal was decided. Trial counsel's failure to predict a change in the law does not constitute deficient performance. *See Herring v. Secretary, Dept. Of Corrections,* 397 F.3d 1338, 1352 (11th Cir. 2005); *United States v. Ardley,* 273 F.3d 991, 993 (11th Cir. 2001) (citing *Spaziano v. Singletary,* 36 F.3d 1028, 1039 (11th Cir. 1994); *Davis v. Singletary*, 119 F.3d 1471, 1476 (11th Cir. 1997); *Jackson v. Herring,* 42 F.3d 1350, 1359 (11th Cir. 1995); *Pitts v. Cook,* 923 F.2d 1568, 1572-74 (11th Cir. 1991); *Thompson v. Wainwright*, 787 F.2d 1447, 1459 n.8 (11th Cir. 1986)). This is true even when the change is such that the forfeited issues was, in hindsight, a sure winner. *Id.* (Citing *Wright v. Hopper,* 169 F.3d 695, 707-708 (11th Cir. 1999) (*Batson* issue); *Elledge v. Dugger,* 823

F.2d 1439, 1443 (11th Cir. 1987) (*Michigan v. Mosley* issue); *Thompson v. Wainwright*, 787 F.2d at 1459 n. 8 (*Ake* issue)). That is not the case here.

Furthermore, it is well established that when counsel's alleged ineffectiveness involves a failure to competently litigate a Fourth Amendment claim, in order to demonstrate actual prejudice, the defendant must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2582-83, 91 L.Ed.2d 305 (1986); *Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006). Regardless of whether a defendant's guilt is established by the excludable evidence, the proper question is whether the outcome of the proceedings would have been different had the motion to suppress been filed and the evidence been excluded. *Jones v. United States*, 224 F.3d 1251, 1259 (11th Cir. 2000); *Huynh v. King*, 95 F.3d 1052, 1058-59 (11th Cir. 1996); *Thomas v. Newsome*, 821 F.2d 1550, 1552 (11th Cir. 1987); see also *Ward v. Dretke*, 420 F.3d 479, 488 (5th Cir. 2005).

In the seminal case of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) the Supreme Court held that law enforcement officers have the authority under the Fourth Amendment to stop and temporarily detain citizens when officers have a "reasonable suspicion" that "criminal activity may be afoot." There is a wide-ranging body of case law addressing the circumstances under which such investigatory stops, or *Terry* stops, may be conducted. The "reasonable suspicion" required for a *Terry* stop is a less demanding standard than probable cause in that the information needed to support reasonable suspicion need not be as detailed or as reliable as that required to form the basis for a showing of probable cause. *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990).

Seizures which began as stops for motor vehicle infractions are constitutionally permissible. *United States v. Hoffman*, 113 F.3d 192 (11th Cir. 1997) (no tag light); *Draper v. Reynolds*, 369 F.3d 1270, 1275-76 (11th Cir. 2004) (tag light improperly illuminated); *Whren v. United States*, 571 U.S. 806, 810, 116 S.Ct. 1769,

1772 (1996) ("As a general matter, the decision to stop an automobile is reasonable where police have probable cause to believe that a traffic violation has occurred."). Therefore, there was no legal basis for a viable challenge to the traffic stop at the time of the trial court proceedings. Counsel is not ineffective for failing to preserve or argue a meritless claim. *Freeman v. Attorney General, Florida,* 536 F.3d 1225, 1233 (11th Cir. 2008); see also *Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore,* 240 F.3d 907 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence)*; Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit).

### 3. Maximum Sentence under 18 U.S.C. § 924(e)

Defendant's third ground for relief appears to be that counsel was constitutionally ineffective because he misinformed his client that the maximum penalty for violations of 18 U.S.C. § 924(e) was life imprisonment. Defendant complains that Congress never prescribed a maximum penalty for § 924(e) and that the appellate courts collectively erred in "guessing" what Congress intended to be the maximum penalty. The basis for his argument is unclear. Counsel cannot be deemed constitutionally ineffective for advising his client in accordance with prevailing Circuit precedent and Supreme Court law. The law is well established that the maximum statutory penalty under the ACCA is life imprisonment. See *United States v. Brame*, 997 F.2d 1426, 1428 (11th Cir. 1993) (statutory maximum penalty for ACCA offenses is life in prison) (collecting cases); *Logan v. United States*, 128 S.Ct. 475, 479 169 L.Ed.2d 432 (2007) (same); *Custis v. United States*, 511 U.S. 485, 487, 114 S.Ct. 1732, 1734 (1994) (same). To the extent defendant now claims that he was

unaware of this at the time he entered his plea because the maximum penalty was not set forth in the indictment, his claim is disingenuous.  The written plea and cooperation agreement specifically provided that if the court determined defendant had prior qualifying convictions, he faced a mandatory minimum term of fifteen years imprisonment, and a maximum term of life.  (Doc. 16 at 2).  The court also orally reiterated at defendant's rearraignment the potential penalties he faced, and he affirmed, under oath, that he understood.  (Doc. 35 at 15, 17).  And finally, the defendant's 294 month guidelines sentence was unaffected by the statutory maximum.   He has shown neither constitutionally deficient performance nor prejudice and is not entitled to relief on this ground.

4. <u>Amendment of Indictment during Plea Colloquy</u>

      Defendant contends that counsel was constitutionally ineffective for failing to argue that the government impermissibly amended the indictment during the plea colloquy.  He states:

> A reading of petitioner's indictment alleges only one factual basis constituting the "in or affecting commerce" element of the charged offense, namely that Petitioner "did knowingly possess .38 caliber ammunition" and that said ammunition came from Arizona, even though said fact was not charged in indictment.

      The indictment stated that the ammunition defendant possessed had previously been transported in interstate commerce.  Defendant's reference to Arizona is perplexing, as the geographic origin of the ammunition was not mentioned in either the written statement of facts or the government's recitation of the facts at trial.  In each instance, the ammunition was described merely as having "traveled in interstate commerce before being illegally possessed by the defendant." (Doc.14 at 3, doc. 35 at 23).  Likewise, the origin of the ammunition was not identified in the PSR.  (PSR ¶ 11).  There was no amendment of the indictment, and counsel

was not constitutionally ineffective for his failure to make such a groundless objection.

5. **Failure to argue constitutionality of 18 U.S.C. § 924(e)**

Defendant's final ground for relief appears interrelated with defendant's third claim.  Here, he seems to assert that counsel should have argued that §924(e) was unconstitutional because the statute itself does not specify a statutory maximum penalty.  Such an argument would have been futile, and counsel did not perform deficiently by failing to raise it.

To the extent he also argues that counsel was constitutionally ineffective for his failure to argue that U.S.S.G. § 4B1.4(b)(3)(A) was not cited in the indictment, defendant's argument likewise fails.  There is no legal requirement that an indictment allege potentially relevant portions of the sentencing guidelines that may be used to calculate a defendant's advisory guidelines ranges.  Counsel's failure to make this argument was not constitutionally deficient.

Based on the foregoing, it is respectfully RECOMMENDED:
The motion to vacate, set aside, or correct sentence (doc. 68)  be DENIED.

At Pensacola, Florida, this 15th day of May, 2009.


/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE


**NOTICE TO THE PARTIES**

*Case No: 3:06cr26/MCR; 3:08cv315/MCR/MD*

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. <u>See</u> 28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11th Cir. 1988).**